AGNES B. CARR, PLAINTIFF-APPELLANT, v. SUSIE BANG-HART, DEFENDANT-RESPONDENT.

Argued October 26, 1933—Decided February 2, 1934.

For the plaintiff-appellant, *Charles H. Stewart.*

For the defendant-respondent, *King & Vogt (Elmer King).*

The opinion of the court was delivered by

BODINE, J. The plaintiff sued to recover damages for an alleged breach of a warranty contained in a deed with full covenants. The jury returned a verdict of no cause of action. The deed is dated June 7th, 1928, and refers to a diagram annexed to a contract of sale dated June 7th, 1926. The description of the lands conveyed is as follows: "Beginning at the fifth corner mentioned in a deed from Chester P. Grassmuck and Louise M. Grassmuck to said Susie Banghart, dated the 4th day of March, 1926, and recorded in the Sussex county clerk's office in book 290 of deeds at page 128 and running thence (1) along the said fifth course mentioned in said deed south 14 degrees, 50 minutes east along an old fence one hundred and seventy (170) feet more or less to the edge of the reservoir of the Morris Canal and known as Lake Musconetcong, thence (2) along the edge of said reservoir and known as Lake Musconetcong in a westerly direction two hundred and one (201) feet, thence (3) north twenty-five degrees east two hundred (200) feet, more or less, to the southerly line of Musconetcong Avenue, thence (4) along the southerly line of Musconetcong Avenue north seventy-six (76) degrees thirty (30) minutes east fifty (50) feet to the point or place of beginning."

The diagram shows the courses called for in the description. After the plaintiff entered into possession she was informed that title to the lands between the reservoir mentioned in the first and second courses of her deed and a point approximately fifty feet to the north, was vested in the State of New Jersey. She thereupon procured a lease for such lands and brought the present suit.

The state's claim to the lands was predicated upon the charter of the Morris Canal and Banking Company and con-

veyances made to it. The Morris Canal and Banking Company was incorporated in 1824. *Pamph. L., p.* 158. Section 26 of the act provides as follows (page 170) : "That at the end of ninety-nine years from the passing of this act, it shall and may be lawful for this state, to take to itself, and on its own account the said canal and its appurtenances, paying to the said company the fair value thereof, to be estimated and fixed upon by ten commissioners or a majority of them, to be mutually chosen by this state and the said company; or in case that shall not be done at that time, or within one year thereafter, this charter shall continue so far as respects its canal operations and privileges for the further term of fifty years, when it shall cease, and the said canal with its appurtenances become the sole property of this state."

In 1924, the legislature authorized the Morris Canal and Banking Company to discontinue the use of its canal as a means of transportation by water. *Pamph. L.* 1924, *p.* 506. The act also provided: "The rights vested in the Morris Canal and Banking Company to impound and divert waters of lakes, ponds and streams, and the property and rights vested in the said company in * * * Lake Musconetcong (otherwise known as Stanhope Reservoir) * * * together with all such lands, easements, rights and other property, the title to which is vested in the said company in trust for the State of New Jersey * * * shall be retained by the said company in trust for the State of New Jersey, for the public use of conserving the public waters of the state, and shall be and are hereby dedicated to such public use * * *."

When the canal was chartered, railroads were unknown. The legislature regarded the creation of such a public highway as of so much importance that the franchise must be limited. The right to an interest in reversion or remainder was preserved to the state. *McCarter, Attorney-General,* v. *Lehigh Valley Railroad Co.,* 78 *N. J. Eq.* 346.

The canal company acquired title to the lands in question by deed dated December 16th, 1846, from Charles Brooks, and wife, the description being by metes and bounds. The instrument is one of rather casual drawing and recites an

agreement whereby the canal company had the right to make and construct a reservoir for water at such place as it deemed proper between Planes Number One and Two West and to cover with water all the lands of Brooks necessary to be covered by raising the water of the reservoir to the height of twelve feet from the then bottom of the canal. A subsequent conveyance by Brooks to the Sussex Iron Works possibly included the lands in question but it expressly excepted therefrom whatever title had been conveyed to the canal company. By deed from the Musconetcong Iron Works dated June 12th, 1878, such interest, if any, as had passed from Brooks was conveyed to the plaintiff's predecessor in title. This conveyance by its fifth course is as follows: "South 12 degrees 30 minutes west 175 feet to the edge of the reservoir of the Morris Canal; thence along the edge of said reservoir the several courses thereof at high water mark to the place of beginning." This deed does not refer to the prior conveyance of the canal company, and is the basis of several claims made by the defendant.

It is apparent from the testimony and the records that the right of the canal company in the reservoir, the lands thereunder and the lands essential to raising the level thereof within the four corners of the Brooks grant was more than a mere right of flowage, and further that the state preserved by the charter a very definite interest therein. Since the state had no right of entry until the charter limitations expired or the project was formally abandoned, the provisions of section 20 of the statute of limitations (3 *Comp. Stat.,* *p.* 3170), are inapplicable.

At the trial of the issue, the plaintiff called as a witness a civil engineer, who had before him the deed from Brooks to the canal company, a map which he had made, and the deed from Brooks to the Sussex Iron Works, above referred to, and dated 1848 and recorded September 15th, 1851. This latter deed covered the plaintiff's property and from it the chain of title ran to her grantors. The northerly line of the reservoir as fixed by the calls of the deed to the canal company was placed thirty-five to forty feet from the water's

edge. Another engineer places the canal company's line from twenty-three to fifty feet back from the water's edge, and we apprehend that this must be so because the defendant's engineer on cross-examination admitted that such would be the result from a survey in the light of the description contained in the canal company's deed. The later conveyance made by Brooks excepted all the lands and privileges conveyed to the canal company. It would, therefore, seem that the defendant's rights, if any, must arise from something other than a title from Brooks.

Since the state's right to possession and use arose upon the formal abandonment of the canal, we think neither the defense of adverse possession, or possession commenced in 1878, under color of title could be interposed as a defense, since no period of limitation had run since the interest of the state accrued.

It is argued that since the canal company could take by purchase that it might also lose lands to an adverse claimant. We think there is no merit in this suggestion, since the lands in question were appurtenant to the canal and necessary for its purposes. The state in granting the limited charter realized its duty to preserve the canal as a means of transportation for its people. As against its reversionary interest in this highway and its appurtenances, no hostile rights could arise. An encroachment upon a public highway cannot be legalized by mere lapse of time. *Cross* v. *Morristown*, 18 *N. J. Eq.* 305.

The proofs do show that the defendant and her predecessor in title were in actual possession for more than thirty years. *Conaway* v. *Daly*, 106 *N. J. L.* 207; *Gordon* v. *Lumberville Bridge Co.*, 108 *Id.* 261. There is even a suggestion in *Pinckney and Bruen* v. *Burrage and Stephens*, 31 *Id.* 21, 24, that "the broad and comprehensive language of the statute may possibly justify its application to the cases of reversioners and remaindermen." But we think not as against the interest of the state as they were reserved in the charter to this canal company. "Who is to watch, for example, so as to detect, within a certain period, all encroachments upon

the innumerable public highways in the state? or who is to keep a similar guard over all parts of its extensive harbors and navigable rivers?" *Cross* v. *Morristown,* 18 *N. J. Eq.* 312.

The mere fact that the canal was abandoned does not change or alter the necessity of keeping its courses and appurtenances open for public use as against the occupancy of individuals. By the very nature of the thing it was destined and built for a public use and the mere change in the nature of the use cannot operate so as to change the public rights.

Since the deed from Brooks contained a description of the lands in question by metes and bounds it passed more than a mere easement of flowage. But assuming otherwise the lands and appurtenances were essential for canal purposes. It was the canal company's charter which reserved to the state the right, title and interest taken by the canal company. The abandonment of the canal could not inure to the benefit of any adjoining owner. But by clear intent the abandonment gave rise to a new use for state purposes.

The plaintiff's request for a directed verdict should have been granted. The judgment below is reversed.

*For affirmance*—CASE, HETFIELD, JJ. 2.

*For reversal*—THE CHIEF JUSTICE, TRENCHARD, PARKER, LLOYD, BODINE, DONGES, HEHER, PERSKIE, KAYS, DEAR, DILL, JJ. 11.